IN THE DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APRIL BAYLIS, | : | |
|     Plaintiff, | : | |
| v. | : | C. A. No. 04-1462-KAJ |
| RED LION GROUP, INC., a corporation of the State of Pennsylvania, | : | |
|     Defendant. | : | |

**<u>PLAINTIFF'S REPLY BRIEF IN RESPONSE TO DEFENDANT'S MOTION</u>**

**<u>FOR SUMMARY JUDGMENT</u>**

_____
Bayard Marin
The Law Offices of Bayard Marin
521 West Street
Wilmington, DE 19801
302-658-4200
Attorney for Plaintiff

Dated: August 30, 2005

## TABLE OF CONTENTS

TABLE OF CITATIONS..................................................................................................ii

I.   NATURE AND STAGE OF THE PROCEEDING..............................................1

II.  SUMMARY OF ARGUMENT...............................................................................2

III. STATEMENT OF FACTS.......................................................................................3

IV.  ARGUMENT.............................................................................................................5

    A.  STANDARD OF REVIEW............................................................................5

    B.  ARGUMENT....................................................................................................5

        1.  Because Plaintiff has shown that the fire extinguisher was defective and that her injuries were proximately caused by that defect, Defendant, Red Lion Group, Inc. was negligent..............................................................5

        2.  Because Plaintiff has shown that the fire extinguisher was not damaged while within Honeywell's control and was supplied by Red Lion Group, Inc. defective, Defendant, Red Lion Group, Inc. is liable under Strict Liability..........................................................................................................9

        3.  Because Plaintiff has shown that the fire extinguisher was defective, Defendant, Red Lion Group, Inc. has breached its warranty of merchantability..............................................................................................10

        4.  Because Plaintiff has shown that Honeywell made Red Lion Group, Inc. aware of the specific purpose for the fire extinguishers and relied on Red Lion Group, Inc.'s expertise in selecting suitable fire extinguishers for such purpose, Defendant, Red Lion Group, Inc. has breached it's implied warranty of fitness for a particular purpose.................................................10

V.   CONCLUSION..........................................................................................................11

# TABLE OF CITATIONS

Cases

Celotex Corp. V. Catrett,
477 U.S. 317 (1986)..............................................................................5, 11

Goodman v. Mead Johnson & Co.,
534 F.2d 566 (3d Cir. 1976).........................................................................5

Joseph v. Jamesway Corp.,
1997 LEXIS 264, Herlihy, J. (Del Super, July 9, 1997)...........................5-6

Matsushita Electric Industrial Co., v. Zenith Radio Corp.,
475 U.S. 574 (1986)......................................................................................5

Martin v. Ryder Truck Rental, Inc.,
Del. Supr., 353 A.2d 581 (Del. 1976)..........................................................9

Roselli v. General Electric Co.,
Pa.Super., 410 Pa. Super. 223 A.2d 687 (1989)..........................................6

Smith v. Henry S. Brancome, Inc.,
2004 U.S. Dist, LEXIS 20574, Jordan, J. (D. Del. October 8, 2004).......5,7

Troy v. Kampgrounds of America, Inc.,
Pa.Super. 581 A.2d 665(1990)...................................................................5-6

Other

Fed. R. Civ. P. 56(c)......................................................................................5

6 Del. C. §2A-212........................................................................................10

6 Del. C. §2A-213........................................................................................11

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff's Complaint arises out of personal injuries sustained as a result of Plaintiff's operation of an unreasonably dangerous fire extinguisher on November 14, 2002. Count I of the Complaint asserts that Plaintiff's injuries were proximately caused by Defendant's negligence. Plaintiff asserts Defendant negligently manufactured and distributed the fire extinguisher, failed to property inspect the fire extinguisher, failed to take reasonable steps to prevent the alleged defect, failed to warn Plaintiff of its risks and failed to properly instruct users on safe usage of the fire extinguisher. Count II asserts that Defendant is strictly liable for Plaintiff's injuries. Count III asserts that Defendant breached its implied warranty of merchantability. Count IV asserts Defendant breached its implied warranty of fitness for a particular purpose.

Plaintiff's Complaint was originally filed in the Superior Court of the State of Delaware in and for New Castle County. Defendant, based on diversity jurisdiction, removed the action to this Court on November 22, 2004.

The discovery cut-off was July 5, 2005.

The matter is scheduled for a jury trial beginning February 13, 2006. Defendants made a motion for Summary Judgment on all counts, pursuant to Fed. R. Civ. R. 56. Because there is a genuine issue of material fact Plaintiff is entitled to a denial of Defendant's motion for summary judgment.

## SUMMARY OF ARGUMENT

1. A genuine issue of material fact as to Red Lion Group Inc.'s negligence exists. Defendant distributed a defective product and failed to warn plaintiff of the potential risks. Employees of Both Honeywell and Red Lion Group, Inc. testified that $CO_2$ was only to disperse via the hose on the extinguisher and that if $CO_2$ dispersed in any other manner, than the fire extinguisher was defective. Additionally, defendant knew the product was going to be used in a safety demonstration.

2. A genuine issue of material fact exists under strict liability against Red Lion Group Inc.

3. A genuine issue of material fact as to Red Lion Group Inc.'s breach of a warranty of merchantability exists. Employees from Honeywell stated in sworn affidavits that the defective extinguisher was neither improperly stored or handled while in their custody. Employees of Both Honeywell and Red Lion Group, Inc. testified that $CO_2$ was only to disperse via the hose on the extinguisher and that if $CO_2$ dispersed in any other manner, than the fire extinguisher was defective.

4. A genuine issue of material fact as to Red Lion Group Inc.'s breach of a warranty of fitness for a particular purpose exists. Rus Davis contacted Red Lion Group, Inc. and requested several fire extinguishers for a Safety Day demonstration. Honeywell relied on Red Lion Group, Inc. to provide properly working fire extinguishers for that Safety Day demonstration.

## STATEMENT OF THE FACTS

On November 14, 2002, Plaintiff April Baylis took part in a "Health and Safety Day" at Honeywell International, Inc., her place of employment. (Depo. of John Peters, A-46). The program included hands-on fire extinguisher training whereby employers were given the opportunity to extinguish a live fire using a fire extinguisher supplied by Defendant, Red Lion Group, Inc. The fire safety portion of Safety Day was monitored, in part, by John Peters and Jerry McCarthy. They explained to employees going through the station the proper techniques to use when attempting to extinguish a fire. (Depo of John Peters, A-43).

Plaintiff, April Baylis was one of the employees who went through the station. She was a new employee at Honeywell and had never participated in Safety Day before. (Depo of April Baylis, A-37-A-38). She had never operated an extinguisher before. After listening to the explanation, Ms. Baylis picked up an extinguisher to put out the fire that had been started for her demonstration. She squeezed the trigger of the extinguisher and $CO_2$ gas dispersed on her hand and not through the nozzle. (Depo of Patrick McCarthy, A20-A-21). She quickly picked up another extinguisher and put out the fire. She was then sent to tend to her injured hand. (Depo of John Peters, A49).

The fire extinguisher she used was provided by Red Lion Group, Inc. (Admission in Defense Brief, p. 3). These extinguishers were specifically ordered for use during Safety Day. (Depo of Patrick McCarthy, A19, Affidavit of Rus Davis, A-51, A-53). Rus Davis, of Honeywell, relied on the expertise of Red Lion Group, Inc. to select extinguishers that were suitable and proper working order for the safety demonstration. (Affidavit of Rus Davis, A-52). The extinguishers were delivered the day before the demonstration. (Affidavit of Charles McClain, A-54). They were stored overnight in the storeroom. (Depo of Patrick McCarthy, A-14). The storeroom and the receiving area are one in the same. (Depo of Patrick McCarthy, A-16-A-17). The storage room was locked at the end of the day and was not unlocked until the following morning. (Affidavit of

3

Patrick McClain, A-55). The temperature in the storage room was average room temperature and was not excessively cold or hot. (Affidavit of Rus Davis, A-52). The extinguishers were transported in a typical utility cart with four inch sides from the storeroom to the "Boneyard" where the demonstrations were scheduled to occur. (Depo of Patrick McCarthy, A-14-A-15). The distance between the storeroom and the "Boneyard" is approximately 150 yards. (Affidavit of Rus Davis, A-52). The extinguishers were not dropped or otherwise mishandled while in the care of Honeywell. (Affidavit of Charles McClain A-54).

After Ms. Baylis' injury, Red Lion Group, Inc. was contacted to report the defective extinguisher. Rus Davis told Red Lion Group, Inc. that he flagged the extinguisher he believed to be the defective one, but could not be sure and that all 5lb. extinguishers should be inspected. Only the flagged extinguisher was inspected. (Depo of Elton Vincent, A-13).

Since the day of the Ms. Baylis' injury, Honeywell has changed their procedures for use of fire extinguishers. Those using fire extinguishers must wear gloves, a fire jacket and a safety shield. (Depo of Patrick McCarthy, A22).

## IV. ARGUMENT

### A. Standard of Review

A Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In order for the non-moving party to prevail it must show specific facts showing a genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). "A court must review the evidence and construe all inferences in the light most favorable to the non-moving party." Smith v. Branscome, Inc., 2004 U.S. Dist. LEXIS 20574, *7 (Jordan, J). (October 8, 2004), referring to Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976). If "a rational trier of fact" could find for the non-moving party, then a genuine issue for trial exists and the motion for summary judgment must be denied. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Argument
**1. Because Plaintiff has shown that the fire extinguisher was defective and that her injuries were proximately caused by that defect, Defendant, Red Lion Group, Inc. was negligent.**

Red Lion Group, Inc. suggests that plaintiff has been unable to prove that the fire extinguisher which improperly dispersed CO-2 gas onto plaintiff's hand was defective. Defendant refers to Joseph v. Jamesway Corp. for that assertion. Joseph refers to Troy v. Kampgrounds of America, Inc., Pa.Super. 581 A.2d 665(1990) for the standard that failure to produce the defective product doesn't result in *per se* dismissal. It allows "a

5

*prima facie* case to be made where there is (1) a malfunction and (2) evidence eliminating abnormal use or reasonable secondary causes for the malfunction". Id. at 668. In its discussion of the failure to produce defective products, the Court fears plaintiff's and their attorney's will destroy products if "inspection would weaken rather than strengthen a case". Joseph v. Jamesway Corp., 1997 LEXIS 264, (Herlihy, J). (Del. Super., July 9, 1997), quoting Roselli v. General Electric Co., Pa.Super., 410 Pa. Super. 223, 599 A.2d 687-88 (1989).

In the case at hand, plaintiff's employer notified Defendant of the damaged extinguisher. (Depo of Elton Vincent, A-13). A flag was attached to the believed damaged extinguisher. (Id.) Rus Davis notified Red Lion Group, Inc. that Honeywell could not be positive the correct extinguisher had been flagged and that all extinguishers should be examined. (Id.) The fact that all other extinguishers were not examined is a problem solely within Defendant's control.

Employees of Red Lion Group, Inc. described only one other alternative that could have caused the CO-2 to discharge improperly. Elton Vincent suggested that a leak could occur if the extinguisher builds up pressure above the limit. He suggested that may occur when the extinguisher was stored in a hot room, such as a boiler room. (Depo of Elton Vincent A-7-8). However, Safety Day occurred in November and was not stored in a boiler room. (Affidavit of Rus David A-51). Plaintiff has therefore negated all other possibilities for a defect.

Employees of Honeywell state that the extinguishers were moved only once after they were delivered on November 13,2005, that they were transported via a utility cart

6

with four inch sides, and that no extinguishers were dropped or mishandled while in their care. (Affidavit of Charles McClain A-54). Defendant infers that Honeywell did not properly transport the extinguishers from the storeroom to the "Boneyard" the day of the demonstration. However, Defendant has not offered an expert that will testify as to a specialized method of transportation of fire extinguishers.

Patrick McCarthy testified that he saw CO-2 leaking out of an area where the "piping screws into the handle and there is what I consider a compression fitting that goes down around the piping that goes to the cone of the extinguisher. (Depo of Patrick McCarthy A-35). He later stated that CO-2 is only to discharge from the horn and not the hosing. (Id. A-36). Other witnesses at the scene of the incident confirmed that the CO2 was leaking from the same spot. (Depo of John Peters A-49). Even employees of the defendant company admitted that CO2 disbursing from any other part of the extinguisher other than the nozzle, meant that the extinguisher was operating in a defective manner. (Depo of Thomas O'Hanlon A-1, Depo of Elton Vincent, A-11-A12). As such, plaintiff has met it's burden that negligence on the part of Red Lion Group, Inc. is the only possible cause for Ms. Baylis' injuries.

Defendant, Red Lion Group, Inc. relies on Smith v. Brancome, Inc. for it's assertion that suppliers of dangerous chattel have no duty to warn users of potential dangers if the users could be considered "sophisticated users". (Defendant's Brief p. 8). However in the Smith case, the plaintiff admitted that he and his company had been aware for over two years of the directional change of the cables. Smith v. Brancome, Inc. et al., 2004 U.S. Dist. LEXIS 20574, *14 (Jordan, J). (October 8, 2004). In contrast, the plaintiff in this case was not a sophisticated user. Plaintiff had never used a fire

extinguisher, prior to this incident. (Depo of April Baylis A-38). Further Ms. Baylis was a new employee at Honeywell, hired just two months before this incident, and had not previously been a part of Safety Day. (Id. A37-38).

The defendant argues that Red Lion Group, Inc. is relieved of its duty to warn of potential dangers in the use of fire extinguishers because Honeywell and those employees who monitored Safety Day could be considered sophisticated users. However, Red Lion Group, Inc. was made aware of the purpose for the fire extinguishers. (Depo of Patrick McCarthy, A19, Affidavit of Rus Davis, A-51, A-53). Honeywell is in the business of manufacturing chemicals to be used in final products such as scents, sticky stuff for post-it notes, etc., pesticides, oils, etc. They are not connected to the fire extinguishers business in any way. (Affidavit of Rus Davis A-51, Affidavit of Charles McClain A-54). Defendant's brief suggests that John Peters and Patrick McCarthy were instructors for the Safety Day demonstration. However, John Peters testified that he and Mr. McCarthy acted more in a supervisory role and that any instruction consisted of discussing the P-A-S-S acronym and general things to look out for in a fire. (Depo of John Peters A-44-A47). No instruction was made on the potential dangers of fire extinguishers. Further, defense counsel himself acknowledges that John Peters was not an expert in fire extinguishers. (Id. at A-50). Red Lion wishes to rely on the fire fighting experience of some of the Honeywell employees to relinquish their duty to warn of potential dangers. Yet, Red Lion Group, Inc. has not proven that they were aware of the credentials of the Honeywell employees prior to the accident. Knowledge after the fact, does not relinquish their duties to warn.

Defendant's final argument is that even had defendant warned of the potential

8

risks of using a fire extinguisher, Plaintiff would still have been injured. Since Ms. Baylis' injury, Honeywell's operating procedure now requires those using fire extinguishers to wear gloves, a fire jacket, and safety shield. (Depo of Patrick McCarthy, A22). Had Ms. Baylis been warned of the dangers of fire extinguishers and been wearing the now required clothing, she would not have had $CO_2$ come into direct contact with the skin on her hands. She would not have been injured.

Plaintiff has shown that a defect in the fire extinguisher provided by Red Lion Group, Inc. existed, that Red Lion Group, Inc. was made aware of the specific intended use of those extinguishers during Safety Day, the injured Plaintiff was not a sophisticated user, and that warning the Plaintiff of the potential dangers would have prevented her injuries. As such, Red Lion Group, Inc. motion for summary judgment should be denied.

> 2. **Because Plaintiff has shown that the fire extinguisher was not damaged while within Honeywell's control and was supplied by Red Lion Group, Inc. defective, Defendant, Red Lion Group, Inc. is liable under Strict Liability.**

In a claim for strict liability, Plaintiff does not need to prove negligence on the part of defendant. The Plaintiff must only show that the product was defective. Martin v. Ryder Truck Rental, Inc., Del. Supr., 353 A.2d 581, 583 (Del. 1976). As discussed above, the fire extinguisher provided to Honeywell was defective.

Patrick McCarthy testified that he saw CO-2 leaking out of an area where the "piping screws into the handle and there is what I consider a compression fitting that goes down around the piping that goes to the cone of the extinguisher. (Depo of Patrick McCarthy A-35). He later stated that CO-2 is only to discharge from the horn and not the hosing. (Id. A-36). Other witnesses at the scene of the incident confirmed that the

CO2 was leaking from the same spot. (Depo of John Peters A-49). Even employees of the defendant company admitted that CO2 disbursing from any other part of the extinguisher other than the nozzle, meant that the extinguisher was operating in a defective manner. (Depo of Thomas O'Hanlon A-1, Depo of Elton Vincent, A-11-A12). The only alternatives suggested for the defect, that the extinguisher was stored or transported improperly, was negated. Thus, Defendant's motion for summary judgment must be denied.

> 3. **Because Plaintiff has shown that the fire extinguisher was defective, Defendant, Red Lion Group, Inc. has breached its warranty of merchantability.**

6 Del. C. §2A-212 for leased goods provides that in order to prove a breach of the implied warranty of merchantability, a plaintiff must show that a goods were leased, the goods were not merchantable at the time they were leased, the plaintiff was damaged, and the damage was caused by the breach of the warranty of merchantability and the seller had notice of the damage. Plaintiff has been able to establish all those requirements. Defendant Red Lion Group, Inc. admits that it provided the fire extinguishers to Honeywell for Safety Day. (Admission in Defense Brief, p. 3). Defense counsel does not argue that plaintiff was not injured nor that her injuries were related to the faulty extinguisher. Also, Red Lion Group, Inc. was immediately notified of the defective extinguisher. (A-13). The only remaining criteria is that the extinguisher was defective when it was delivered to Honeywell. As thoroughly discussed above, that requirement is met as well. Therefore Defendant's motion for summary judgment must be denied.

> 4. **Because Plaintiff has shown that Honeywell made Red Lion Group, Inc. aware of the specific purpose for the fire extinguishers and relied on Red Lion Group, Inc.'s expertise in selecting suitable fire extinguishers for such purpose,**

10

### Defendant, Red Lion Group, Inc. has breached it's implied warranty of fitness for a particular purpose.

6 Del. C. §2A-213 requires a Plaintiff show that the lessor know at the time of contracting the particular purpose for which the goods are required and the lessee relied on the lessor's expertise to select goods to fulfill that purpose in order to succeed on a claim of breach of an implied warranty of fitness for a particular purpose. Plaintiff has been able to prove both of those elements. Rus Davis notified Red Lion Group, Inc. of the particular purpose for the extinguishers. (Affidavit of Rus Davis, A-51). They were to be used for Safety Day demonstrations and not combined with those extinguishers used for normal use. (Affidavit of Charles McClain, A-55). Red Lion Group, Inc.'s own invoice states that it acknowledged that the extinguishers were to be used for safety Day. (Id. A-53). Honeywell does not work with fire extinguishing materials and Rus Davis relied on Red Lion Group, Inc.'s expertise when ordering the extinguishers. (Affidavit of Rus Davis, A-51). While Honeywell specified what type of extinguishers it wished to rent for Safety Day, it relied on Red Lion Group, Inc. to provide those extinguishers in properly working order. Again, defendant wishes to rely on its post-accident knowledge regarding the previous fire fighting experience of some of Honeywell's workers to relieve itself of the duty to provide products in proper working condition. There is no evidence that Red Lion Group, Inc. was aware of this information before the accident. Since plaintiff has been able to prove that both elements for breach of an implied warranty of fitness for a particular purpose have been met, defendant's motion for summary judgment should be denied.

## V. CONCLUSION

The party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Whereas, there are genuine issues of material fact in this case, Defendant's Motion for Summary Judgment must be denied.

_____
Bayard Marin
The Law Offices of Bayard Marin
521 West Street
Wilmington, DE 19801
302-658-4200
Attorney for Plaintiff

Dated: August 30, 2005