IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APRIL BAYLIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 04-1462-KAJ |
| | : | |
| RED LION GROUP, INC., a corporation of | : | |
| the State of Pennsylvania, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY BRIEF IN
<u>SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

/s/ Norman H. Brooks, Jr.
Norman H. Brooks, Jr., Esquire (No. 2568)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant*

DATED: September 9, 2005

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   COUNTER STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.   Plaintiff failed to make out a *prima facie* case of negligence against Red Lion Group, Inc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   Red Lion Group is not liable under strict liability because Plaintiff has failed to show that the fire extinguisher was defective . . . . . . . . . . . . . . . 5

     C.   Plaintiff's failure to offer evidence establishing a defect warrants a dismissal of the claim of breach of an implied warranty of merchantability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     D.   Because Plaintiff had no special purpose for extinguisher, and her employer specified the exact type of extinguishers Red Lion Group was to supply, there was no evidence to support a warranty of fitness for purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

i
## TABLE OF CITATIONS

*DiIenno v. Libbey Glass Div.*,
*Div.*, 668 F. Supp. 373 (D. Del. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In Re: Asbestos Litigation*,
542 A.2d 1205 (Del. Super. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Joseph v. Jamesway Corp.*,
1997 Lexis 264 (Del. Super., July, 9, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Reybold Group, Inc. v. Chemprobe Tech., Inc.*,
721 A.2d 1267 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*Smith v. Henry S. Branscome, Inc.*,
2004 U.S. Dist. LEXIS 20574 (D. Del. October 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . 4

*Troy v. Campgrounds of Amer., Inc.*,
581 A.2d 665 (Pa. Super. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Wilhelm v. Globe Solvent Co.*,
373 A.2d 218 (Del. Super. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# I. COUNTER STATEMENT OF THE FACTS

Plaintiff represents that Honeywell employee, Russ Davis, relied on the expertise of Red Lion Group, Inc. to select extinguishers that were suitable for its demonstration. However, Plaintiff admits that Honeywell specified the type of extinguishers it wanted to rent for Safety Day. (D.I. 43, pg. 11). In response to that request, Red Lion supplied the specific number of each type of extinguisher as requested. Because Honeywell specified the type of extinguishers it wanted to rent, there was no reliance on Red Lion Group's expertise to select appropriate extinguishers.

Plaintiff contends that only the extinguisher that was 'flagged' by Mr. Davis was inspected. (D.I. 43, pg. 4). Mr. Vincent actually testified at deposition that the other extinguishers were not checked by himself in his presence. (D.I. 43, A11). A letter was sent from Mr. Vincent to Mr. Davis specifically discussing the "tagged extinguisher". (Letter to Elton Vincent, C1). While this letter specifically addresses the extinguisher Mr. Davis tagged, all extinguishers are inspected during the recharging process. (D.I. 39, A2).

It is also important to note that Charles McClain, whose affidavit supports many of Plaintiff's purported facts was not identified in the Form 30s or Plaintiff's Answers to Interrogatories as someone's first hand knowledge of the incident.

## II.    ARGUMENT

A.    **Plaintiff failed to make out a *prima facie* case of negligence against Red Lion Group, Inc.**

To support its claim of negligence, Plaintiff mistakenly relies upon the Pennsylvania trial court's decision in *Troy v. Campgrounds of Amer., Inc.*, 581 A.2d 665 (Pa. Super. 1990), for the proposition that a *prima facie* case may be made where there is: 1) a malfunction; and 2) evidence eliminating abnormal use or reasonable secondary causes for the malfunction. In *Troy*, this proposition was accepted in the context of a strict liability theory; **not** negligence. While a Plaintiff may be able to circumstantially prove a negligence case, the burden is a heavy one. *Joseph v. Jamesway Corp.*, 1997 Lexis 264 at *9 (Del. Super., July, 9, 1997) (Herlihy, J.) (D.I. 39, Ex. 1). To do so under Delaware law, Plaintiff must establish that negligence is the **only** possible inference from the circumstantial evidence. *Id.* at *10. Plaintiff fails to meet this burden.

Plaintiff erroneously avers that there is only one alternative that could have caused the alleged malfunction. Plaintiff misleadingly asserts that Red Lion Group, Inc.'s employees described only one alternative that could have caused the CO2 to discharge improperly. (D.I. 43, p. 6). While Mr. Vincent may have only described one alternative scenario that could have caused the alleged malfunction, in no way did he state it was the only alternative. Mr. Vincent was simply replying to Plaintiff counsel's specific questions regarding pressure build up in extinguishers. (D.I. 43, A7 through A8). Plaintiff attempts to use Mr. Vincent's response to negate all other possible scenarios. Other possible scenarios certainly do exist. While Mr. Vincent discusses how the extinguishers are affected by heat, there is no discussion of how other temperature changes may cause problems.

Another alternative is Plaintiff's possible misuse of the fire extinguisher. Peters testified that a person's handness would not make a difference in training as the pins are on the left-hand side of the extinguisher so that a person would be forced to pick up the extinguisher with the right hand in order to pull the pin. (Depo. of John Peters, C2-C3). The other way would be too awkward. (Depo. of John Peters, C2-C3). Baylis has testified as to being left-handed. (Depo. of April Baylis, C4). She attempted to operate the fire extinguisher by pulling the pin with her right hand with her left hand free and the extinguisher sitting in front of her. (Depo. of April Baylis, C5-C6). She then picked up the extinguisher with the left hand. (D.I. 43, A-40). The left hand became the trigger hand and the right hand became the sweeping hand (D.I. 43, A-40), which is a mirror opposite of Peter's instruction. Because Plaintiff had never used a fire extinguisher before (D.I. 43, p.3), it is a distinct possibility that Plaintiff's own negligence could have caused her alleged injuries. Finally, the instructions from Patrick McCarthy or John Peters on the day of the incident could have caused a mishandling of the fire extinguisher. (D.I. 43, p.3).

Because Plaintiff has not negated *all* possibilities for the alleged defect, she has not established a *prima facie* case of negligence on the part of Red Lion Group. Without effectively proving a defect in the fire extinguisher, Plaintiff certainly can not establish the requisite causal link between the alleged defect and any injuries sustained. Accordingly, Plaintiff has not put forth evidence sufficient to warrant a jury trial on the issue of negligence.

In discussing Defendants' alleged negligence for failure to warn, Plaintiff fails to establish that the extinguisher did in fact present an unreasonably dangerous risk. "Delaware

has recognized a duty of care that sellers have to warn of known dangers associated with products they place on the market." *Wilhelm v. Globe Solvent Co.*, 373 A.2d 218, 223 (Del. Super. 1977). Parenthetically, Defendant did not sell the extinguishers to anyone. It simply leased then to Plaintiff's employer, who then arranged for instructors to train Plaintiff in the use of the fire extinguisher. Defendant had no duty to supplant the training, which by its very nature, included warnings, that was provided by the lessee, Honeywell.

Plaintiff has failed to establish that there existed any known danger associated with the subject fire extinguisher. Because Plaintiff has not established that the fire extinguisher presented an unreasonably dangerous risk, Red Lion Group had no duty to warn users of one. Thus, Red Lion Group, Inc. was under no duty to warn members of Honeywell's training class of any potential dangers associated with using the fire extinguisher.

Assuming *arguendo*, that Plaintiff can establish that the fire extinguisher presented an unreasonably dangerous risk, Red Lion's duty to warn is negated because the user should have known of any alleged potential danger. *Smith v. Branscome, Inc.*, 2004 U.S. Dist. LEXIS 20574, *16-17 (Jordan, J.) (October 8, 2004) (D.I. 39, Ex. 2). The injury occurred while Plaintiff was undergoing hands-on training in the safe operation and use of fire extinguishers. Plaintiff attempts to diminish Honeywell's direct instruction and supervision during the hands-on demonstration. Plaintiff correctly notes that Defendant was not aware of John Peters's and Patrick McCarthy's fire fighting expertise until after the incident. While Defendant was only made aware of the specific expertise of these Honeywell employees after the incident, the record compels the conclusion that the Honeywell employees possessed requisite knowledge to safely conduct such training. Red Lion Group,

Inc. would ordinarily have sent its own instructor to conduct the training. However, in this instance, Honeywell provided its own instructor to conduct the training. (D.I. 39, A2). The instructor is obviously the person tasked with giving appropriate warnings as the hands-on training is being conducted. Because Honeywell supplied its own instructors for the hands on fire safety demonstration, Red Lion Group was entitled to assume that Honeywell's employees possessed knowledge of fire extinguishers sufficient to train its employees, which training included appropriate warnings.

To support her assertion that the lack of an adequate warning proximately caused the injuries, Plaintiff relies on Honeywell's change in operating procedure after the injury. Honeywell apparently now requires those using fire extinguishers in training exercises to wear gloves, a fire jacket, and safety shield. (D.I., A22). Honeywell's change in operating procedures during hands-on training fails to support Plaintiff's contention. It is instead a concession that the hands-on training could have been conducted in a safer manner; one which would have practically eliminated an injury to the hand as a result of $CO_2$ gas, whether from operator error or an equipment malfunction.

### B.   Red Lion Group is not liable under strict liability because Plaintiff has failed to show that the fire extinguisher was defective.

In her claim for strict liability, Plaintiff again reiterates that the fire extinguisher rented to Honeywell was defective. Plaintiff relies on the testimony of Patrick McCarthy to establish this unidentified and indescribable defect. However, Mr. McCarthy himself admitted that he was unable to appreciate any defect in the fire extinguisher and that it appeared to be in good working order. (D.I. 43, A25).

The fire extinguisher was in good working order when it was delivered to Honeywell

on November 13 (D.I. 39, A2). Control of the fire extinguishers was then relinquished to Honeywell. Honeywell employees were in control of the fire extinguishers from the time of delivery until the fire safety demonstration -- approximately 24 hours. While Charles McLain, a Honeywell employee, states that none of the fire extinguishers were dropped or damaged by any Honeywell employee, he does not address the transportation of the extinguishers from the store room to the "bone yard." (D.I. 43, A-51). Also, Mr. McClain was never identified in the Form 30s or Plaintiff's Answer to Interrogatories as someone who had first-hand knowledge of the incident. Given the manner in which the extinguishers were transported, it is highly possible that they could have been damaged during this time. Any damage resulting from the transport of the extinguishers would the be the responsibility of Honeywell, not Red Lion Group.

Red Lion Group can only be held strictly liable if they delivered a defective fire extinguisher. After a complete review of the facts in this matter, Plaintiff can not establish that Red Lion Group delivered a defective fire extinguisher. Thus, Red Lion Group can not be held strictly liable for Plaintiff's injuries.

    **C.**    **Plaintiff's failure to offer evidence establishing a defect warrants a dismissal of the claim of breach of an implied warranty of merchantability.**

When the defective nature of the goods are in question, "proof of a defect is an essential element of a claim for a breach of warranty of merchantability." *Reybold Group, Inc. v. Chemprobe Tech., Inc.*, 721 A.2d 1267, 1269 (Del. 1998). In order to withstand a summary judgment motion, Plaintiff is required to present evidence to support all elements of its claim by either direct or circumstantial evidence. *Id*. at 1269-70.

Plaintiff's circumstantial showing is limited to showing the defect was present at the

time the fire extinguisher was discharged. Although he was never identified as someone with first-hand knowledge, Plaintiff attempts to use Charles McClain's affidavit to demonstrate that no extinguishers were dropped or mishandled while under Honeywell's control during transport. However, because Mr. McClain's statement omits mention of the fire extinguishers' transport from the storeroom to the boneyard where the incident occurred, he speaks to only half of the equation. Plaintiff's contention overstates the substance of the McClain Affidavit. (D.I. 43, A-51).

Russ Davis's affidavit states the distance between the storeroom to the boneyard, but fails to state the level of care taken during transport. (D.I. 43, A-54). Because neither Charles McClain nor Russ Davis offer any first-hand evidence on the actual transport, they can not affirmatively state that the fire extinguishers were not mishandled or otherwise damaged during transport from the storeroom to the boneyard, Plaintiff ineffectively accounts for the time from which the fire extinguisher was out of Defendant Red Lion Group's immediate control to the time of the incident. Therefore, Plaintiff has failed to provide sufficient circumstantial evidence to prove the defect was present at the time Defendant Red Lion Group delivered the fire extinguisher to Plaintiff's employer, Honeywell.

Expert testimony is required to establish proof of a good's defect. *Id*. at 1270. In the absence of that evidence, the Defendant is entitled to summary judgment as to the breach of warranty of merchantability claim. *Id.* at 1270-71. Furthermore, Plaintiff has failed to produce expert testimony to establish proof of a defect in the extinguisher. Hence, Plaintiff's claim of breach of warranty of merchantability must fail and Defendant is entitled to judgment as a matter of law.

> **D.     Because Plaintiff had no special purpose for the extinguisher, and her employer specified the exact type of extinguishers Red Lion Group was to supply, there was no evidence to support a warranty of fitness for purpose.**

Plaintiff's claim that the extinguishers were used for the "particular purposes" of Safety Day demonstrations simply has no merit. When a product is used for its ordinary purpose there is no special purpose possessed only by the user. *See DiIenno v. Libbey Glass Div.*, 668 F. Supp. 373, 377 (D. Del. 1987). Here, Honeywell employees including Plaintiff were using the fire extinguisher to put out fires. A fire extinguisher's sole purpose is to do exactly that, put out fires. Thus, Plaintiff had no special purpose for the fire extinguisher.

In supporting her claim for a breach of implied warranty of fitness for a particular purpose, Plaintiff attempts to argue that Honeywell relied on Red Lion Group, Inc.'s expertise when ordering the extinguishers. (D.I. 43, pg. 11). This, however, is a mischaracterization of the Affidavit of Russ Davis. In his Affidavit, Mr. Davis states "In choosing Red Lion for the extinguishers, I relied on their expertise." (D.I. 43, A52). Plaintiff admits that Honeywell specified the type of extinguishers that it wanted for the event. (D.I. 43, pg. 11). Moreover, it provided its own instructors. The crucial element as to an implied warranty of fitness for a particular purpose is that the buyer relies on the seller's skill or judgment to select or furnish suitable goods. *In Re: Asbestos Litigation*, 542 A.2d 1205, 1214 (Del. Super. 1986). Because Honeywell specified the type of extinguishers for safety day, it in no way relied on Defendant's expertise to select those fire extinguishers. Plaintiff argues that Honeywell relied on Red Lion Group, Inc. "to provide those extinguishers in properly working order." This is an argument better suited for an implied warranty of merchantability claim. Because there was no reliance on Red Lion Group's

expertise in the selection of the fire extinguishers, there existed no implied warranty of fitness for a particular purpose. As such, Red Lion Group is entitled to summary judgment as a matter of law.

## V. CONCLUSION

Viewing the facts in a light most favorable to Plaintiff compels the conclusion that she has filed to support of her claims for negligence, strict liability, breach of implied warranty for merchantability and breach of implied warranty of fitness for a particular purpose. The claims are wholly unsubstantiated and present no dispute of material fact. Because there are no facts in dispute that would warrant a trial, the Court should find Plaintiff has offered insufficient evidence to establish a *prima facie* on each claim as a matter of law.

Accordingly, the Court should grant Defendant Red Lion's Motion for Summary Judgment in its entirety.

/s/ Norman H. Brooks, Jr.          Norman H. Brooks, Jr., Esquire (#2568)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant*

DATED: September 9, 2005