IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APRIL BAYLIS,                           )
                                        )
                Plaintiff,              )
                                        )
        v.                              )       Civil Action No. 04-1462-KAJ
                                        )
RED LION GROUP, INC., a corporation     )
of the State of Pennsylvania,           )
                                        )
                Defendant.              )

## MEMORANDUM OPINION

———————————————

Bayard Marin, Esq., 521 West Street, Wilmington, Delaware 19801; Counsel for Plaintiff.

Norman H. Brooks, Jr., Esq., Marks, O'Neill, O'Brien & Courtney, P.C., 913 North Market Street, #800, Wilmington, Delaware 19801; Counsel for Defendant.

———————————————

December 7, 2005
Wilmington, Delaware



**JORDAN, District Judge**

## I. INTRODUCTION

April Baylis ("Baylis") brought this suit against Red Lion Group, Inc. ("Red Lion"), a Pennsylvania corporation, claiming that she was injured by an unreasonably dangerous fire extinguisher manufactured and distributed by Red Lion. Before me is Red Lion's Motion for Summary Judgment under Fed. R. Civ. P. 56(c). (Docket Item ["D.I."] 39; the "Motion.") The court has jurisdiction over the subject matter of this diversity action under 28 U.S.C. § 1332. For the reasons that follow, I will grant the Motion.

## II. BACKGROUND[1]

On November 14, 2002, Baylis participated in a Health and Safety Day at her place of employment, Honeywell International, Inc. ("Honeywell"). (D.I. 39 at 3, A17; D.I. 43 at 3.) The program included fire extinguisher training where, under the supervision of Honeywell employees John Peters and Jerry McCarthy, employees could put out fires with fire extinguishers. (D.I. 39 at A13-14, A19-20.) Baylis, who had never used a fire extinguisher before (D.I. 43 at 3), listened to an explanation of their use and picked up an extinguisher to put out a fire set for the demonstration. (D.I. 39 at A17.) When she squeezed the trigger, carbon dioxide gas was dispersed onto her left hand. (*Id.*) According to a witness, Patrick McCarthy, carbon dioxide leaked from the area where the "piping screws into the handle and there is . . . a compression fitting that goes down around the piping that goes to the cone of the extinguisher." (D.I. 43 at A35.) Baylis then put down that extinguisher, picked up another one, and put out the

---

[1]The following background information is taken from the parties' submissions and does not constitute findings of fact.

fire.  (D.I. 39 at 3; D.I. 43 at 3.)  Later, she was treated for injuries from the leaked carbon dioxide.  (D.I. 43 at 3.)

Honeywell ordered from Red Lion the fire extinguishers used on Safety Day. (D.I. 39 at A2.)  Before they were delivered to Honeywell, the extinguishers were recharged, inspected, and deemed to be safe and in good working condition by Red Lion.  (*Id.*)  Red Lion delivered 21 extinguishers to Honeywell's loading dock on November 13, 2002.  (*Id.*)  Red Lion transported the extinguishers in an upright position in a van, in which they were secured by ratchet strap belts while in transit.  (*Id.*)

The extinguishers were stored overnight in a locked storeroom (D.I. 43 at A14, A54-55), which was not excessively hot or cold (*Id*. at A52).  On the morning of November 14, Honeywell employees moved the extinguishers approximately 150 yards on a utility cart to the area where the fire training took place.  (*Id*. at A14-15, A52.) What, if anything, may have happened to the extinguishers overnight or while being transferred to and from the storeroom is not known.

After Baylis's injury, Honeywell's Health, Safety and Environmental Specialist, Russell Davis, placed a tag on the extinguisher he believed to be the first one used by Baylis.  (D.I. 39 at A3.)  On November 15, 2002, Red Lion retrieved all of the extinguishers, including the tagged one.  (*Id*. at 5.)  The tagged extinguisher was discharged, recharged, and discharged again, and Red Lion found no defective condition.  (*Id*. at A3.)

Baylis brings four causes of action against Red Lion.  First, Baylis alleges that Red Lion negligently manufactured and distributed the fire extinguisher, failed to

2

properly inspect it, failed to take reasonable steps to prevent the alleged defect, failed to warn Baylis of its risks, and failed to properly instruct users on safe operation of the extinguisher. (D.I. 39 at 1; D.I. 43 at 1.) Baylis says that this negligence caused her injuries. (*Id.*) Second, Baylis alleges that Red Lion is strictly liable for her injuries. (*Id.*) Third, Baylis alleges that Red Lion breached an implied warranty of merchantability. (*Id.*) Fourth, Baylis alleges that Red Lion breached an implied warranty of fitness for a particular purpose. (*Id.*)

## III.   STANDARD OF REVIEW

A court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). A court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, the

3

non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When a motion for summary judgment is supported under Rule 56(c) by the moving party, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

Since jurisdiction in this case is based on diversity of citizenship, I must apply the substantive law of Delaware. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Baylis has failed to present evidence to support her claims under Delaware law, so I will grant Red Lion's Motion.

### A. Failure to Show that the Extinguisher was Defective When Delivered

Baylis's negligence claims are divided into claims of negligent manufacture and claims of negligent failure to warn. As further described herein, the claims of negligent manufacture, as well as the claims of strict liability and breach of an implied warranty of merchantability, require proof that the fire extinguisher was defective at the time Red Lion delivered it to Honeywell. Baylis has failed to offer such proof.

#### 1. Negligence

"In order to prove a claim of negligence in the context of a products liability action alleging a manufacturing defect, the plaintiff must establish that the product was

4

Case 1:04-cv-01462-KAJ   Document 51   Filed 12/07/05   Page 6 of 11 PageID #: 230

defective." *Joseph v. Jamesway Corp.*, No. Civ.A.93C-12-182-JO, 1997 WL 524126, at *3 (Del. Super. Ct. July 9, 1997). Where there is no direct evidence of a manufacturing defect based on expert examination of the product, a plaintiff may make a circumstantial prima facie case that the product was defective by showing "(1) a malfunction and (2) evidence eliminating abnormal use or reasonable secondary causes for the malfunction." *Id.* at *2. In the context of negligence claims, Delaware courts have held that "the plaintiff must establish that negligence is the only possible inference from the circumstantial evidence." *Joseph*, 1997 WL 524126, at *3; *see also Ciociola v. Del. Coca-Cola Bottling Co.*, 172 A.2d 252, 257 (Del. 1961). In the absence of evidence that a product was defective at the time of sale, "[s]ummary judgment is appropriate." *Dilenno v. Libby Glass Div.*, 668 F. Supp. 373, 377 (D. Del. 1987).

Requiring a plaintiff to eliminate "abnormal use or reasonable secondary causes for the malfunction" is a heavy burden. *See Joseph*, 1997 WL 524126, at *3 ("[T]he burden is not light . . . .") In *Ciociola*, the plaintiff injured her hand when a soda bottle broke in her hand. 172 A.2d at 255. The Court upheld a directed verdict for the defendant because the plaintiff failed to eliminate the possibility that the bottle was damaged after it was delivered by the defendant to the store where the accident took place. *Id.* at 257-59. The Court concluded:

> [T]he record falls short of proving that there could have been no damage to the bottle in question following the approximate [sic] twenty or so hours after the latest possible delivery of the bottle by defendant's delivery man . . . . There is no precise proof as to the course through which the particular bottle went. . . . Under the circumstances, therefore, we think the plaintiff's conclusion that the bottle was delivered with a defect in it does not necessarily follow from the proof in this record.

5

*Id.* at 258. The plaintiff's contention that her parents, the store owners, would have heard or noticed any post-delivery damage to the bottle as it sat in the store was insufficient to support her claim. *See id.* at 254 ("From this, plaintiffs argue that the inference is that the bottled soda drinks had been handled with care.")

In *Dilenno*, the court granted summary judgment for the defendant in a similar case because the plaintiff "produced no evidence of a manufacturing defect apart from the occurrence of the accident itself. This is wholly insufficient." 668 F. Supp. at 378. The plaintiff in that case failed to eliminate the possibility that a jar, which broke in her hand, was "dropped or mishandled" after it was delivered by the defendant. *Id.* at 379. Similar reasoning was applied in *Fatovic v. Chrysler Corp.*, No. Civ.A.00C08299 HLA, 2003 WL 21481012, at *3 (Del. Super. Ct. Feb. 28, 2003) (granting summary judgment because the plaintiff "presented no evidence negating other reasonable causes" of a malfunction in the removable top of a Jeep) and in *Joseph*, 1997 WL 524126, at *5 (granting summary judgment because of insufficient evidence showing that a stationary bicycle was defective when delivered).

Here, in the absence of direct evidence from an expert that the extinguisher was defective,[2] Baylis must rely upon circumstantial evidence. She argues that she has shown the extinguisher malfunctioned and that she has eliminated other reasonable causes for the malfunction, leaving as the only possible inference that Red Lion provided an extinguisher that was defective on delivery. But, like the plaintiff in

_____

[2]In fact, the evidence shows that no defect was found in the tagged extinguisher. Baylis's argument that the tagged device may not have been the one she used (*see* D.I. 43 at A13) still leaves her claims without direct evidence of defect.

6

*Ciociola*, Baylis has failed to eliminate the possibility of damage during the time between delivery and the malfunction. After Red Lion delivered the extinguishers, they were transported to a storeroom (D.I. 43 at A14, A54-55), kept there overnight (*id.*), and again moved by Honeywell employees the next day to the area used for the demonstration (*id.* at A14-15, A52). Baylis's assertion that "[t]he extinguishers were not dropped or otherwise mishandled while in the care of Honeywell" (*id.* at 4) is not supported by the evidence she presents. McCarthy testified that, from conversations with his boss (*id.* at A14), he knew the extinguishers were in storage and that he did not know who moved them to the demonstration site because "it was a busy morning and [he] just knew that somebody had to get the extinguishers out back" (*id.* at A16). McClain's affidavit states that he received the extinguishers on November 13, that they were placed in the storeroom, and that, "to the best of [his] knowledge," none were "dropped or damaged by any Honeywell employee." (*Id.* at A54.) Baylis's argument based on those statements are similar to the *Ciociola* plaintiff's argument that her parents would have heard or noticed any damage to the bottles during the hours before the accident. As in *Ciociola*, the evidence is insufficient to support the inference of defect. Baylis has presented "no precise proof as to the course through which the particular [extinguisher] went." *See Ciociola*, 172 A.2d at 258. The absence of proof on this essential element requires a grant of summary judgment. *See Dilenno*, 668 F. Supp. at 377.

7

2. Strict Liability and Implied Warranty of Merchantability

Similarly, the claims for strict liability and for breach of an implied warranty of merchantability require Baylis to show that the extinguisher was in defective condition when it was delivered to Honeywell. *Reybold Group, Inc. v. Chemprobe Techs., Inc.*, 721 A.2d 1267, 1269 (Del. 1998) ("[T]o be successful on a breach of warranty of merchantability claim, a plaintiff must prove . . . [the goods] were defective at the time of sale . . . ."); *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581, 588 (Del. 1976) ("Under the doctrine of strict liability . . . [the defendant] may be held liable . . . if the truck it placed in circulation proved to have a defect . . . ."). Baylis rests her argument on the circumstantial proof of defect already discussed (D.I. 43 at 9-10), and the failure of that proof requires a grant of summary judgment on those claims as well.

Accordingly, I will grant Red Lion's Motion on the negligent manufacture, strict liability, and implied warranty of merchantability claims.

B. Failure to Show a Negligent Failure to Warn

Baylis claims that Red Lion negligently failed to warn her of risks associated with using the fire extinguisher, and that this failure caused her injury. "Delaware has recognized a duty of care that sellers have to warn of known dangers associated with products they place on the market. A seller may have learned of such danger either through actual or constructive notice." *Smith v. Henry S. Branscome, Inc.*, No. 03-349, 2004 WL 2323634, at *4 (D. Del. Oct. 8, 2004) (citing *Wilhelm v. Globe Solvent Co.*, 373 A.2d 218, 223 (Del. Super. Ct. 1977)). A supplier has a duty to warn when it "knows or has reason to know that [the supplied product] is or is likely to be dangerous

for the use for which it is supplied." *Betts v. Robertshaw Controls Co.*, No. Civ.A.89C-08-028, 1992 WL 436727, at *2 (Del. Super. Ct. Dec. 28, 1992) (applying Restatement (Second) of Torts § 388).

Baylis must show that Red Lion knew or had reason to know that the extinguisher was likely to be dangerous. Baylis never directly states what the known danger was, but she presumably bases her argument on the danger of carbon dioxide leaks. However, Baylis does not respond to Red Lion's argument that she has presented no evidence that Red Lion had actual or constructive knowledge of a danger from such leaks. *Cf. Betts*, 1992 WL 436727, at *2 (denying summary judgment motion because the plaintiff presented some evidence showing that the defendant "should have known of the . . . dangerous condition"). Accordingly, I will grant Red Lion's Motion on the failure to warn claim.

C. Failure to Show Applicability of Implied Warranty of Fitness

Finally, Baylis also claims that Red Lion breached an implied warranty of fitness for a particular purpose. Under the Delaware Uniform Commercial Code, a lessor may be liable for breaching this warranty if, at the time of contracting, the lessor has reason to know any particular purpose for which the goods are required and further knows that the lessee is relying on the lessor's superior skill to select goods for that particular purpose. 6 *Del. Code* § 2A-213; *see also Dilenno*, 668 F. Supp. at 376 (outlining the same elements for a warranty attaching to the sale of goods). This claim only arises when the goods are to be used for a special purpose particular to the individual user, not when the goods are used in their ordinary way. *Id*. at 376 (describing as "ridiculous" the argument that a jar was purchased for the particular purpose of opening and closing

9

because that is "a jar's ordinary purpose"). In the absence of a special purpose, the remedy, if any, will be limited to one under the implied warranty of merchantability. *Id*. at 376-77.

Here, Baylis fails to show that Honeywell informed Red Lion of any use for the fire extinguishers beyond their ordinary use:  extinguishing fires.  Thus, Baylis's claim that Honeywell relied on Red Lion to provide extinguishers in proper working order does not invoke an implied warranty of fitness, but is instead a recasting of her implied warranty of merchantability claim. *See id*.  Accordingly, I will grant Red Lion's Motion on the implied warranty of fitness claim.[3]

## V.  CONCLUSION

Based on the foregoing reasons and authorities, I will grant Red Lion's Motion for Summary Judgment.  An appropriate order will issue.

---

[3]Furthermore, even if Baylis had shown a special purpose, Honeywell did not rely on Red Lion's expertise because it told Red Lion exactly what type of extinguishers it wanted to rent (D.I. 39 at 12; D.I. 43 at 11).

10